UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

QUENTON DEBERRY,

             Plaintiff,                     Case No. 1:16-cv-1097

v.                                        Honorable Gordon J. Quist

TRINITY SERVICES GROUP INC. et al.,

             Defendants.
_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Quenton Deberry presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility, though the actions about which he complains occurred while he was housed at the Michigan Reformatory (RMI). Plaintiff sues Trinity Services Group, Inc. (Trinity), the unknown Trinity Supervisor at RMI (Unknown Party #1), RMI Nurse (unknown) Slusher, and RMI Storekeeper (unknown) Spencer.

On March 24, 2016, Plaintiff went to breakfast. His breakfast tray included oatmeal. After Plaintiff had consumed 75% of his oatmeal, he noticed what appeared to be a worm in it. He showed it first to an unknown officer, who told him to show it to Lieutenant Whittinger. Whittinger agreed that it looked like a worm and sent him to show it to Unknown Party #1. When Unknown Pary #1 looked at the oatmeal, he laughed and pulled the "worm" from the oatmeal, saying it was the tail of a rat. He added, "[I]t's no big deal and he had just threw oatmeal and potatoes away a few days prior to the incident . . . . ." (Compl., ECF No. 1, PageID.4.) Unknown Party #1 added that, if Plaintiff would accept another tray, he would give Plaintiff extra food. Plaintiff refused.

Plaintiff went back to Lt. Whittinger and informed him that Unknown Party #1 was just throwing away the evidence and that the object in Plaintiff's oatmeal was not a worm, but was a rat tail. Whittinger rushed to find Defendant Unknown Party #1 and instructed him to remove the rat tail and the oatmeal from the trash can. Whittinger then went back into the dining hall and ordered all inmates to stop consuming the oatmeal, to throw it away, and to get new trays.

On March 25, 2016, Plaintiff sent a request to health care to be examined about having consumed a portion of a rat. Plaintiff complained that he had begun to experience gastrointestinal complications. Defendant Slusher responded on March 27, 2016, denying Plaintiff's request for treatment and indicating that Plaintiff had already been examined by health care.

Plaintiff contends that the response was false, as he had not been seen since his consumption of the oatmeal.

On March 28, 2016, Plaintiff went to the commissary to pick up his pre-ordered securepak from Defendant Spencer. After opening his bag, Plaintiff noticed that there were holes and rat feces in all of his food items. Plaintiff returned to Defendant Spencer, who conceded that a rat had been at Plaintiff's food. Spencer informed Plaintiff that he had killed the rat. Defendant Spencer then smirked and asked Plaintiff if he had had enough of finding rats in his food. When Plaintiff asked what Spencer meant, Spencer merely laughed and walked away. Plaintiff showed his damaged commissary products to Officer Wilson, who verified that there were holes and feces in Plaintiff's food items.

Plaintiff was called to health service by Health Unit Manager Bryan Deeren on April 5, 2016. Deeren, who is not a Defendant in this action, interviewed Plaintiff on his grievance against Defendant Slusher. Deeren allegedly suggested that Plaintiff had put the rat into his own oatmeal. Moreover, Deeren did not offer Plaintiff medical treatment.

Plaintiff alleges that Defendant Trinity has violated prison policy and the Eighth and Fourteenth Amendments by having a custom and practice of ignoring complaints about its substandard services, despite being aware that prisoners are served rotten and/or maggot- and rodent-infested meals. He also alleges that the individual Defendants were deliberately indifferent to his substantial risk of serious harm by failing to correct the problem of rodent infestation and failing to treat his medical complaint. In addition, he alleges that Defendant Spencer retaliated against him by laughing at his problem.

As the result of consuming food containing a portion of a rat, Plaintiff allegedly has experienced non-stop headaches, blood in his urine and stools, acute diarrhea, and swollen legs and

feet. Due to the severity of his gastrointestinal problems, Plaintiff was treated at the Westshore Hospital in Manistee, Michigan on August 4 and 10, 2016. He also was seen by a urologist on August 19, 2016, in an attempt to find a solution to the blood in his urine and feces. Plaintiff contends that he has lost over 50 pounds due to the damage inflicted on his digestive system. He seeks declaratory relief, together with compensatory and punitive damages.

## Discussion

I.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Plaintiff alleges that Defendants violated the Eighth Amendment by allowing a rat to get into the oatmeal, allowing a rat to chew on Plaintiff's commissary items, failing to provide adequate medical care, and laughing at Plaintiff's predicament.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate indifference standard has both an objective and a subjective element. The objective element requires that the deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Rhodes*, 452 U.S. at 348-49. The subjective element of an Eighth Amendment claim mandates an inquiry into the prison official's mental state. An official must have acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. "[M]ere inadvertence or error in good faith" does not rise to the level of a constitutional violation. *Id.* Instead, a successful Eighth Amendment claim must entail conduct which is characterized by "obduracy and wantonness." *Id.* (citations omitted).

The presence of a rodent in the food service area on a single day does not rise to the level of an Eighth Amendment violation. Courts consistently have held that isolated incidents of foreign bodies, including rodents and insects, surfacing in the food served to prisoners is not an Eighth Amendment violation. *See Tucker v. Rose*, 955 F. Supp. 810, 815 (N.D. Ohio 1997) (holding that the occasional presence of a rodent is insufficient to establish the objective component of an Eighth Amendment claim); *see also Smith v. Younger*, No. 985482, 1999 WL 623355, at *2 (6th Cir. Aug. 9, 1999) (affirming district court's dismissal of plaintiff's Eighth Amendment claim based on the presence of a worm in her peanut butter); *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993)

("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Wiley v. Kentucky Dep't of Corr.*, No. 11-97-HRW, 2012 WL 5878678, at *8 (N.D. Ky. Nov. 21, 2012) (holding that a single instance of a rat in the soup does not violate the Eighth Amendment); *Miles v. Konvalenka*, 791 F. Supp. 212 (N.D. Ill. 1992) (single instance of finding mouse in food not actionable). Plaintiff makes no allegation that Defendant Unknown Party #1 was aware that a rodent was in the oatmeal before Plaintiff discovered it, and he has cited no other incident involving vermin contamination in the food service unit. *See Tucker*, 955 F. Supp. at 815. In addition, Plaintiff's allegations about Defendant Unknown Party's reaction to being shown the rat tail do not lend support to his Eighth Amendment claim. Regardless of Plaintiff's dissatisfaction with it, nothing about Defendant Unknown Party's response placed Plaintiff at an increased risk of harm. Plaintiff's allegations about a single incident of rat contamination fall short of demonstrating deliberate indifference. As a consequence, Plaintiff fails to state an Eighth Amendment claim against Defendant Unknown Party #1.

Moreover, while Plaintiff claims that Defendant Trinity had "policy and practice of ignoring complaints of there companies [sic] substandard and inadequate services" and "continues to allow prisoners to be served rotten and/or maggot and rodent infested meals," he makes no factual allegations supporting his conclusory claim. (Compl., ECF No. 1, PageID.6.) He alleges a single incident of rat contamination in the delivery of food services by Trinity employees. He describes no other incident to demonstrate the existence of any policy or pattern. Plaintiff's conclusory allegations therefore fail to state a claim against Trinity. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

With respect to the allegations against Defendant Spencer, Plaintiff also fails to state a claim. Despite the fact that another rat was involved, the incident occurred in an entirely separate area of the prison that was operated by RMI employees, not Trinity employees. According to Plaintiff's own allegations, Defendant Spencer actually located and killed the offending rodent. The mere fact that the rodent had already damaged Plaintiff's commissary items demonstrates, at best, negligence by Spencer. Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Moreover, to the extent that Plaintiff alleges that Defendants Unknown Party #1 and Spencer may have laughed at him or made remarks minimizing his concerns, he fails to state a claim under the Eighth Amendment. The use of harassing or degrading language by a prison official, although unprofessional, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No.

92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.") Accordingly, Plaintiff fails to state an Eighth Amendment claim against any Defendant based on their callous comments or joking about Plaintiff's problems.

Finally, Plaintiff's allegations against Defendant Slusher also fall short of demonstrating an Eighth Amendment violation. As with other Eighth Amendment claims, a claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In the instant case, Plaintiff alleges Defendant Slusher denied his March 25, 2016 request to be seen by a medical provider. Plaintiff references and attaches both the medical request he sent and the response from Slusher. (Attach. to Compl., ECF No. 1-1, PageID.12-13.) In his health care request, Plaintiff described his problem as follows:

> Yesterday, I reported to Staff that something was in my Breakfast tray on what I thought was a worm later was found out it was a mouse tail. I ate some of that food befor [sic] I realize it was in my oatmeal. Since I haven't eat anything at all. I been feeling really funny. Stomach cramps, mouth been itching. I'm just taking the right steps just in case something is wrong with me.

(*Id.*, PageID.12.) On March 27, 2016, Defendant Slusher responded as follows:

> You have been seen in healthcare for this issue and the reason you are having stomach cramps is probably because you are not eating. It is not good for your body to not eat. Try eating to see if you feel better if not rekite healthcare. Thank you.

(*Id.*, PageID.13.)

Plaintiff's request for health care fell far short of describing a sufficiently serious need for medical care that would have been "obvious even to a lay person." *Blackmore*, 390 F.3d at 899. Indeed, Plaintiff himself indicated that he was kiting health care as a precautionary measure, in case something was seriously wrong with him. Plaintiff's complaint about stomach cramps simply does not create the sort of serious and obvious need for immediate medical attention that would meet the objective component of the deliberate-indifference standard. Moreover, regardless of whether Defendant Slusher was correct in stating that Plaintiff had already been seen on the issue, her response demonstrates that she lacked a subjective awareness of any more serious problem than stomach cramping. "[A]llegations of 'inadvertent failure to provide adequate medical care' . . . or of a 'negligent diagnosis' fail to establish the requisite culpable state of mind." *Wilson*, 501 U.S. at 297 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

For all these reasons, Plaintiff fails to state an Eighth Amendment claim against any Defendant.[1]

---

[1] Plaintiff also alleges that the identical conduct violated the Due Process Clause of the Fourteenth Amendment. The Fourteenth Amendment, rather than the Eighth Amendment, governs claims made by pretrial detainees about unlawful conditions of confinement. *See Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) (but observing that a strong argument exists whether the Due Process Clause guarantees greater protections to a pretrial detainee than the Eighth Amendment standard) (citing cases). Plaintiff, however, is a prisoner who is incarcerated after being convicted

### B.     Retaliation

Plaintiff claims that Defendant Spencer retaliated against him by laughing at him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Even assuming that Plaintiff was engaged in protected conduct, his retaliation claim fails at the second step. Spencer's act of joking about Plaintiff's bad luck with rodents is not sufficiently adverse to support the second prong of Plaintiff's retaliation claim. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). A single instance of comment and laughter simply could not deter a

---

of criminal offenses. "Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). Because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a convicted prisoner's health and safety, Plaintiff's substantive due process claim must be dismissed. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008).

reasonable person from exercising his First Amendment rights. *See Thaddeus* 175 F.3d at 398-99 (holding that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment'") (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Because he fails to allege adverse action, Plaintiff fails to state a retaliation claim.

### C.  Violation of Prison Policy

Plaintiff alleges that Trinity was obligated under its contract with the MDOC to provide inmate meals and food services that met prison policies. *See* r MICH. DEP'T OF CORR., Policy Directive 04.07.100 (Offender Meals); MICH. DEP'T OF CORR., Policy Directive 04.07.102 (Food Quality Assurance). Plaintiff contends that, by allowing food to be served that was contaminated by a rat, Trinity violated those policies.

Defendant Trinity's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. As a consequence, Plaintiff's allegations about policy violations fail to state a constitutional claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  October 14, 2016                               /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE